UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------
VINCENT N. MICONE, III, ACTING                    :
SECRETARY OF LABOR, UNITED STATES
DEPARTMENT OF LABOR,                              :

                Plaintiff,           :     Civil Action No. 1:24-cv-07170-JMF

                v.                   :
JACOB FRYDMAN; AND IBUILT LLC GROUP
HEALTH PLAN,                                      :

                Defendants.          :
-------------------------------------------------------------

# MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S
# MOTION FOR DEFAULT JUDGMENT

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................... 1
BACKGROUND .............................................................................................................................. 1
ARGUMENT .................................................................................................................................... 3
    I.    DEFAULT JUDGMENT IS APPROPRIATE ................................................................ 3
        A.    This Court Has Jurisdiction Over Defendants. ................................................. 4
        B.    The Secretary Has Asserted Legitimate Causes of Action ............................. 7
            1.    Frydman Breached ERISA's Exclusive Purpose Requirement. ................................. 7
            2.    Frydman Breached His Fiduciary Duties to the Plan and Its Participants and Beneficaires.................................................................................................... 8
            3.    Frydman Caused the Plan to Engage in Non-Exempt Prohibited Transactions. ...... 11
            4.    Frydman Engaged in Self-Dealing........................................................................... 12
        C.    The Discretionary Factors All Favor Default Judgment. .............................. 12
    II.    DAMAGES AND INJUNCTIVE RELIEF ..................................................................... 13
        A.    Proposed Statement of Damages ................................................................... 13
            1.    Unfunded Claims for Benefits. ................................................................................. 14
            2.    Unremitted Contributions ......................................................................................... 16
        B.    Injunctive Relief............................................................................................. 17
CONCLUSION............................................................................................................................... 17

**PRELIMINARY STATEMENT**

Default judgment is appropriate here because the well-pleaded factual allegations in the amended complaint establish that defendant Jacob Frydman violated sections 403, 404, and 406 of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1103, 1104, and 1106 with respect to the iBuilt Group Health Plan (the "Plan") and its participants and beneficiaries, and that Frydman is liable for the results of those breaches. Specifically, Frydman failed to fund the Plan and did not communicate its unfunded status to workers, in fact lying to them about its status, resulting in participants and beneficiaries of the Plan seeking medical care that was not funded by the Plan.

As defendants have not answered or otherwise appeared, the Clerk of the Court has already entered default. (Dkt. 22) A hearing on damages is not necessary because the damages are easily computed from defendants' own records as supported by a detailed declaration from senior investigator Brandon Pfister of the U.S. Department of Labor, Employee Benefits Security Administration. Accordingly, pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure and Local Civil Rule 55(b)(2), plaintiff Vincent N. Micone, III, Acting Secretary of Labor, United States Department of Labor (the "Acting Secretary") ask the Court to enter default judgment against Defendants, award damages as set forth below, and appoint of an independent fiduciary to manage the Plan.

**BACKGROUND**

Non-party Deluxe Building Solutions LLC ("DBS") was a manufacturer of modular buildings headquartered in Berwick, PA and incorporated in Delaware on August 17, 2017. (Compl., dkt 3, ¶ 14.) Non-party iBuilt LLC ("iBuilt") was also a manufacturer of modular buildings headquartered in Berwick, PA, and also incorporated in Delaware on September 1,

1

2020. (Compl. ¶ 15.) Defendant Jacob Frydman was DBS's and iBuilt's "manager" and he controlled both companies. (Compl. ¶ 16.)

On March 18, 2021, an involuntary Chapter 7 bankruptcy was filed against DBS. (Compl. ¶ 17.) All DBS employees were immediately made employees of iBuilt. (Compl. ¶ 18.) These employees were paid by DBS up until March 19, 2021 and, thereafter, they were paid by iBuilt. (Compl. ¶ 19.)

The Plan was made effective March 1, 2021. (Compl. ¶ 20.) The Plan was a self-insured health plan funded by employer and employee contributions. (Compl. ¶ 21.) Throughout the relevant time period, defendant Frydman exercised discretionary authority or discretionary control respecting management of the Plan and authority or control respecting management or disposition of its assets, and, thus, Frydman was thus a fiduciary to the Plan. (Compl. ¶ 13.)

Frydman failed to fund the Plan, while continuing to withdraw funding from workers' paychecks for health coverage and telling them that they were covered. (Compl. ¶ 3.) Defendant Frydman withheld money from workers' paychecks to cover health coverage, but he did not forward that money to the Plan or its service providers. (Compl. ¶ 23.) Defendant Frydman also did not collect employer funding for the Plan, even though iBuilt was a going concern and such collections efforts would not have been futile. (Compl. ¶ 24.) During this time, defendant Frydman knew of the coverage issues but was not forthright about them. (Compl. ¶ 25.) Although at one point he acknowledged that there were issues with the Plan, he told employees that he was setting a "credit card account" to cover it. (Compl. ¶ 26.)

Ultimately, on June 4, 2021, iBuilt's workers were told to look for other jobs. (Compl. ¶ 27.) On June 11, 2021, the Plan's administrative services provider terminated the health coverage to its effective date of March 1, 2021. (Compl. ¶¶ 22, 28.)

As a result of these acts and omissions, iBuilt's workers' health claims remain unpaid. (Compl. ¶ 29.)

On September 23, 2024, the Acting Secretary filed his complaint in this case. (Dkt. 3.) The complaint named Frydman as a defendant, and the Plan as a Rule 19 defendant. *Id.* Undersigned counsel sent the complaint to Defendants at an email address used during the investigation, where Defendants acknowledged receipt but declined to waive formal service. (Hartman Decl. ¶ 2.) On December 5, 2024, a paid process server left copies of the complaint and summons at defendant Frydman's home with his doorman. (Dkt. 13.) On December 18, 2024, undersigned counsel mailed a copies of the complaint and summons to the same address. *Id.* Defendants have failed to defendant and, therefore, on January 24, 2024, the clerk of the Court entered Defendants' default. (Dkt. 22.)

## ARGUMENT

### I. DEFAULT JUDGMENT IS APPROPRIATE

The Court may enter default judgment "if liability is established as a matter of law when the factual allegations of the complaint are taken as true." *Bricklayers & Allied Craftworkers Loc. 2 v. Moulton Masonry & Constr., LLC*, 779 F.3d 182, 187 (2d Cir. 2015). In making this determination, "a court is required to accept all of the [plaintiff]'s factual allegations as true and draw all reasonable inferences in its favor." *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009). The Court then considers "the willfulness of the default, the existence of a meritorious defense, and the level of prejudice that the non-defaulting party may suffer should relief be granted." *Commercial Bank of Kuwait v. Rafidain Bank*, 15 F.3d 238, 243 (2d Cir.1994); *see Flanagan v. N. Star Concrete Const., Inc.,* No. 13-CV-2300 JS AKT, 2014 WL 4954615, at *4 (E.D.N.Y. Oct. 2, 2014) (collecting cases).

3

As discussed below, the Acting Secretary's well-pleaded complaint articulates numerous violations of ERISA, and each of the discretionary factors weighs in favor of the Acting Secretary's application for default judgment. Accordingly, the Court should enter a default judgment for the Acting Secretary.

### A.  This Court Has Jurisdiction Over Defendants.

The Court has subject matter and personal jurisdiction. ERISA section 1002(3) defines the term "employee benefit plan" to include any "employee . . . benefit plan." 29 U.S.C. § 1002(2)(a). The Complaint alleges that the instant Plan is an "employee . . . benefit plan within the meaning of ERISA." (Compl. ¶ 18.) Accordingly, the Secretary's well-pled Complaint sufficiently alleges that the Plan is governed by ERISA. ERISA section 502(e)(1) provides that "the district courts of the United States shall have . . . jurisdiction of civil actions under this subchapter brought by the Secretary," including this one. 29 U.S.C. 1132(e)(1).

As discussed above, defendants were properly served through Frydman.

Federal Rule of Civil Procedure 4(e) governs service of process on an individual. Under Rule 4(e), an individual may be served by, among other means:

> (1) following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; or . . .
>
> (2) . . . leaving a copy of [the summons and complaint] at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there.

Fed. R. Civ. P 4(e).

A number of courts within this circuit have approved of service on a doorman as being proper under Rule 4(e)(2). *See 131 Main St. Assocs. v. Manko*, 897 F. Supp. 1507, 1525 (S.D.N.Y. 1995) (service on apartment building doorman of suitable age and discretion was proper service under Rule 4(e)(1), since the building was the doorman's business residence);

4

*Three Crown Ltd. P'ship v. Caxton Corp.*, 817 F. Supp. 1033, 1051 (S.D.N.Y. 1993) (service on building doorman described as being approximately 20 years old was proper).

If the Court finds that this was insufficient process under the Federal Rules of Civil Procedure, then it should find that service was effective under Rule 4(e)(1) and the New York Civil Practice Law and Rules (C.P.L.R.), which govern service of process in New York. Specifically, state courts have held that N.Y. C.P.L.R. 308(2) permits valid service by leaving a copy of the summons and complaint with a doorman at a defendant's residence or dwelling mailing the summons by first class mail. *See Charnin v. Cogan*, 250 A.D.2d 513, 673 N.Y.S.2d 134, 137 (1st Dep't 1998).

The Plan was also properly served through Frydman. ERISA section 502(d)(1) provides, "Service of summons . . . upon a trustee or an administrator of an employee benefit plan in his capacity as such shall constitute service upon the employee benefit plan." 29 U.S.C. § 1132(d)(1). In the absence of a specific designation to the contrary -- which there is no evidence of here -- the Plan's sponsor-- here iBuilt -- is the Plan's administrator. *See* 29 C.F.R. § 2510.3-16(a). And the Acting Secretary has properly alleged that "iBuilt . . . was the administrator of the Plan." (Compl. ¶ 11.) Federal Rule of Civil Procedure 4(e) governs service of process on a corporation, such as iBuilt. Under Rule 4(h)(1), a corporation may be served, among other means:

> (A) in the manner prescribed by Rule 4(e)(1) for serving an individual; or
>
> (B) by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process and—if the agent is one authorized by statute and the statute so requires—by also mailing a copy of each to the defendant . . . .

5

The Acting Secretary has alleged that "Defendant Frydman was the designated manager of iBuilt," (Compl. ¶ 11.) Accordingly, service on Frydman under Rule 4(h)(1)(A) or Rule 4(h)(1)(B) -- both of which have been obtained -- was sufficient for jurisdiction over the Plan.

      The New York Civil Practice Law and Rules also permits alternative service in cases where traditional methods prove impracticable. CPLR § 308(5); CPLR § 311-a(b). In re recent years, courts in New York have broadly approved of service by email. *See, e.g., F.T.C. v. Pecon Software Ltd.*, No. 12 CIV. 7186 PAE, 2013 WL 4016272, at *5 (S.D.N.Y. Aug. 7, 2013) ("Service by email alone comports with due process where a plaintiff demonstrates that the email is likely to reach the defendant."); *Philip Morris USA Inc. v. Veles Ltd.*, No. 06 CV 2988 GBD, 2007 WL 725412, at *3 (S.D.N.Y. Mar. 12, 2007) (rejecting "objections about theoretical reliability of email service," as plaintiff had amply demonstrated "the high likelihood that defendants would receive and respond to email communications, and defendants themselves do not dispute receiving email service in this case"). The Acting Secretary has provided more than the requisite showing of "some facts indicating that the person to be served would be likely to receive the summons and complaint at the given email address." *AMTO, LLC v. Bedford Asset Mgmt., LLC*, No. 14-CV-9913, 2015 WL 3457452, at *8 (S.D.N.Y. June 1, 2015). Here, as stated above, the Department corresponded with Frydman at the identified email address before the case began. *Cf. United States v. Besneli*, No. 14 CIV. 7339 JFK, 2015 WL 4755533, at *2 (S.D.N.Y. Aug. 12, 2015) (finding service by email appropriate where plaintiff had "already conversed" with defendant by using the email address). And Frydman responded to the email, showing that he has received the complaint. *Cf. Metromedia Co. v. Cowan*, 2013 WL 4780039, at *2 (S.D.N.Y. June 24, 2013) (finding service by email appropriate where "Defendants' emails to Plaintiff and the Court confirm that Defendant is receiving information by email").

Accordingly, Defendants have been served, and the Court has jurisdiction over defendants.

**B.     The Secretary Has Asserted Legitimate Causes of Action**

The Acting Secretary's complaint makes out a number of claims for violations of ERISA, including violations of the exclusive purposes requirement, various violations of fiduciary duties, non-exempt prohibited transactions, and self-dealing.

1.     <u>Frydman Breached ERISA's Exclusive Purpose Requirement.</u>

Among ERISA's basic obligations is that "the assets of a plan shall never inure to the benefit of any employer and shall be held for the exclusive purpose of providing benefits to participants in the plan and their beneficiaries and defraying reasonable expenses of administering the plan." 29 U.S.C. § 1103(c)(1). Further, pursuant to U.S. Department of Labor regulations, the assets of an ERISA plan include amounts withheld from a participant's wages by an employer for contribution to the plan as of the earliest date on which such contributions can reasonably be segregated from the employer's general assets. 29 C.F.R. § 2510.3-102. By regulation:

> in no event shall th[is] date . . . occur later than the 15th business day of the month following the month in which the participant contribution or participant loan repayment amounts are received by the employer . . . or the 15th business day of the month following the month in which such amounts would otherwise have been payable to the participant in cash.

*Id.*

The complaint properly alleges that, over the period following March 2021, Frydman was responsible to but failed to remit all employee contributions to the Plan after he could have reasonably segregated them from iBuilt's general assets. (Compl. ¶ 32.) Frydman, thus, violated ERISA section 403(c)(1) by allowing Plan assets to be held outside the Plan for extended periods of time, and for other than their intended purpose. *See, e.g., Finkel v. Union Elevator Corp.*, No.

7

07-CV-2227 ENV MDG, 2011 WL 1655573, at *4 (E.D.N.Y. May 2, 2011) (holding that by failing to remit withheld funds to an ERISA plan, defendant breached its duties under ERISA section 403).

### 2. Frydman Breached His Fiduciary Duties to the Plan and Its Participants and Beneficiaries.

ERISA imposes multiple overlapping fiduciary duties. ERISA section 404(a)(1)(A) requires a fiduciary to discharge their duties "for the exclusive purpose of (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan." 29 U.S.C. § 1104(a)(1)(A). This is known as the duty of loyalty. ERISA section 404(a)(1)(B) also requires that a fiduciary discharge their duties "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." 29 U.S.C. § 1104(a)(1)(B). As the Second Circuit has explained, these provisions impose "different, although overlapping" duties derived from trust law and are ""the highest known to the law." *Donovan v. Bierwirth*, 680 F.2d 263, 271-72 (2d Cir.), *cert. denied*, 459 U.S. 1069 (1982).

ERISA's fiduciary duties have been understood by courts to include an obligation to refrain from making misrepresentations to plan participants. *Varity v. Howe*, 516 U.S. 489, 506 (1996). And related to the fiduciary duty not to make a material misrepresentation is the duty to inform, including "an affirmative duty to inform beneficiaries of circumstances that threaten the funding of benefits." *Acosta v. Pacific Enterprises*, 950 F.2d 611, 618-19 (9th Cir. 1991). This duty requires communication "to the beneficiary material facts affecting the interest of the beneficiary which he knows the beneficiary does not know and which the beneficiary needs to

8

know for his protection in dealing with a third person." *In re Citigroup ERISA Litig.*, 662 F.3d 128, 158 (2d Cir. 2011) (quoting *Restatement (Second) of Trusts* § 173, comment d (1959)).

ERISA defines fiduciary in broad functional terms. *See John Hancock Mut. Life Ins. Co. v. Harris Trust & Sav. Bank*, 510 U.S. 86 (1993). Specifically, ERISA section 3(21)(B) provides, "a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan." 29 U.S.C. 1002(21)(B). The Second Circuit has noted that these functions are "broadly construed." *Blatt v. Marshall & Lassman*, 812 F.2d 810, 812 (2d Cir. 1987). As discussed above, the Acting Secretary's complaint alleges that Frydman exercised discretionary authority or discretionary control respecting management of the Plan and authority or control respecting management or disposition of its assets. (Compl. ¶ 13.) Therefore, he was a fiduciary to the Plan.

As a fiduciary, Frydman violated his duties in at least three ways.

First, over the period following March 2021, Frydman withheld money from workers' paychecks to cover health coverage, but he did not forward that money to the Plan. (Compl. ¶ 23.) This was not in the interests of Plan participants and beneficiaries as required by ERISA section 404(a)(1). *See Bierwirth*, 680 F.2d at 271 (noting that fiduciaries must act "with an eye single to the interests of the participants and beneficiaries"). And, through these same actions, Frydman failed to act prudently. *See Pension Ben. Guar. Corp. v. Solmsen*, 671 F. Supp. 938, 946 (E.D.N.Y. 1987) ("Defendant allocated available monies to corporate expenses rather than the pension fund, thereby breaching his duty to act solely in the interests of the Plan's participants").

9

Second, Frydman also did not collect employer funding for the Plan, even though iBuilt was a growing concern and such collections efforts would not have been futile. (Compl. ¶ 24.) This was an independent breach of his fiduciary duties. *See Cent. States, Se. & Sw. Areas Pension Fund v. Cent. Transp., Inc.*, 472 U.S. 559, 571 (1985)) (highlighting fiduciaries' obligation to "act to ensure that a plan receives all funds to which it is entitled, so that those funds can be used on behalf of participants and beneficiaries"); *see also Donovan v. Bryans*, 566 F. Supp. 1258, 1262 (E.D. Pa. 1983) (ERISA's duty of prudence encompasses "duty to take reasonable steps to realize on claims").

Third, Frydman was not candid with his workers about the funding of the Plan. As discussed above, Frydman knew of the coverage issues but was not forthright about them. (Compl. ¶ 25.) This, itself, violated the fiduciary duties. *See Vescom Corp. v. Am. Heartland Health Administrators, Inc.*, 251 F. Supp. 2d 950, 960 (D. Me. 2003) ("When a fiduciary has knowledge of a plan's financial problems, failure to notify participants and beneficiaries of such problems is a breach of fiduciary duty."); *McNeese v. Health Plan Mktg., Inc.*, 647 F. Supp. 981, 985-86 (N.D. Ala. 1986) (holding that fiduciary breached its obligation under ERISA to inform plan participants that employer was delinquent in making contributions to medical plan, "because without notice[, the beneficiaries] were not able to make other arrangements for insurance coverage"). Frydman went one step further and deceived participants and beneficiaries about the Plan's status. When confronted with funding issues impacting the Plan, he told employees that he was setting up a "credit card account" to cover it. (Compl. ¶ 26.) Such misstatements are clearly inconsistent with fiduciary duties. *Jensen v. SIPCO, Inc.*, 867 F. Supp. 1384, 1396 (N.D. Iowa 1993) ("Misrepresentations or omissions of pertinent information in a

fiduciary's communication with participants and beneficiaries regarding plan administration are breaches of the fiduciary duties recognized by ERISA.").

Thus, Frydman in several ways breached his fiduciary duties to the Plan and its participants and beneficiaries.

3. <u>Frydman Caused the Plan to Engage in Non-Exempt Prohibited Transactions.</u>

ERISA section 406(a)(1)(D) prohibits a fiduciary from causing a plan to engage in a transaction that they should know "constitutes a transfer to, or use by or for the benefit of, a party in interest of any assets of the plan." 29 U.S.C. § 1106(a)(1)(D). ERISA section 3(14) defines "party in interest" to include "an employer any of whose employees are covered by such plan" U.S.C. § 1002(14). *See Central States, Southeast and Southwest Areas Pension Fund v. Central Transport*, 472 U.S. 559, 571-73 (1985) (noting that ERISA's prohibited transaction rules require "that a benefit plan prevent participant employers from gaining even temporary use of assets to which the plan is entitled"). As noted above, by law, amounts that a participant has withheld from their wages for contribution to the plan become plan assets as of the earliest date that the contributions or repayment can reasonably be segregated from the employer's general assets. 29 C.F.R. § 2510.3-102(a)(1).

As an employer of Plan participants, iBuilt was a party in interest to the Plan. (Compl. ¶ 46.) As alleged in the complaint, over the period following March 2021, Frydman was responsible to but failed to segregate and remit all of the Plan's assets to the Plan's accounts, and instead allowed the Plan's assets to remain in general iBuilt accounts. (Compl. ¶ 47). No exemption applies to these prohibited transactions. (Compl. ¶ 49); *see Whitfield v. Tomasso*, 682 F. Supp. 1287, 1302 (E.D.N.Y. 1988) (setting out exemptions). Thus, the retention of employee contributions in its general assets constituted a non-exempt prohibited use of plan assets, in violation of ERISA section 406(a)(l)(D).

11

### 4. Frydman Engaged in Self-Dealing.

ERISA section 406(b)(1) prohibits a fiduciary from dealing with plan assets "in his own interest or for his own account." 29 U.S.C. § 1106(b)(1). Similarly, ERISA section 406(b)(2) prohibits a fiduciary from acting in any transaction involving the plan on behalf of a party whose interests are adverse to the interests of the plan or of its participants and beneficiaries. 29 U.S.C. § 1106(b)(2); see *Gruby v. Brady*, 838 F. Supp. 820, 833 (S.D.N.Y. 1993) (noting adverse interest of employers funding plans and participants). As the Second Circuit has noted, "protection of beneficiaries and notice to fiduciaries requires that Section 406(b) be broadly construed." *Lowen v. Tower Asset Management*, 829 F.2d 1209, 1213 (2d Cir. 1987).

As properly alleged in the complaint, defendant Frydman allowed Plan assets to remain in iBuilt's general operating account, which benefitted the iBuilt's business interests, and therefore defendant Frydman's interests as iBuilt's manager, at the expense of the Plan and its participants and beneficiaries. (Compl. ¶ 53.) Thus, Frydman engaged in prohibited self-dealing in violation of ERISA sections 406(b)(1) and (2).

### C. The Discretionary Factors All Favor Default Judgment.

In determining whether to grant a default judgment, the Court is guided by the same factors which apply to a motion to set aside entry of a default. *See Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993). These factors are: (1) whether the default was willful; (2) whether ignoring the default would prejudice the adversary; and (3) whether a meritorious defense is presented. *Id.* When a defendant does not appear and fails to respond to a plaintiff's complaint and motion for default, all three factors weigh against the defendant, and the default motion should be granted. *See Flanagan*, 2014 WL 4954615, at *5.

Here, defendants have not appeared and have failed to respond to the complaint and the motion for default. According, all of the default factors weigh against defendants. As a court within this district has explained:

> Since Defendants have been entirely unresponsive, their continued failure is willful. Moreover, since Defendants have not filed an answer, there is no evidence of any defense. Finally, denying this motion would be prejudicial to Plaintiff, as there are no additional steps available to secure relief in this Court. Therefore, all three factors are met, and a default judgment is warranted.

*Bridge Oil Ltd. v. Emerald Reefer Lines, LLC*, No. 06 CIV. 14226RLCRLE, 2008 WL 5560868, at *2 (S.D.N.Y. Oct. 27, 2008). The Court should enter default judgment.

## II.   DAMAGES AND INJUNCTIVE RELIEF

The Acting Secretary seeks $131,905.61 in unpaid benefits. In the alternative, the Acting Secretary seeks $22,359.93 in unremitted contributions. In either case, the Acting Secretary seeks appointment of an independent fiduciary. As set forth below, the Court can award the damages sought by the Secretary without an inquest hearing because the damages owed are supported by a declaration from Brandon Pfister and defendants' own records.

### A.   Proposed Statement of Damages

The damages the Acting Secretary seeks in this matter can be established without a hearing. Rule 55(b)(2) of the Federal Rules of Civil Procedure does not require a hearing on damages because the damages are a sum certain that have been established by investigator Pfister based on defendants' own records, which defendants have not put into dispute. *See Finkel*, 577 F.3d at 87. (noting Rule 55's "not requiring . . . a district court to conduct a hearing before ruling on a default judgment").

There are two alternative bases on which the Court can award damages.

13

1. <u>Unfunded Claims for Benefits.</u>

Where a fiduciary's actions have caused harm to a participant or beneficiaries that cannot be characterized as a loss to the plan, such as unpaid medical claims, the Acting Secretary may seek "appropriate equitable relief," including surcharge, pursuant to ERISA section 502(a)(5), 29 U.S.C. § 1132(a)(5). The U.S. Supreme Court has held that, where a fiduciary breach results in harm to plan participants but causes no loss to the plan, surcharge may provide an equitable route to recovery. *See generally CIGNA Corp. v. Amara*, 563 U.S. 421 (2011). Surcharge is an equitable remedy designed to make an aggrieved party whole for losses caused by a fiduciary breach, which the Acting Secretary has pleaded in its second claim for relief (requesting an order "requiring, by surcharge, that defendant Frydman fund the claims properly incurred by participants and beneficiaries during the Plan's operation").

To obtain surcharge against the offending party, the following elements must be established: (1) a breach of fiduciary duty; (2) harm; and (3) causation. *Id.* at 442. Breach has already been established above. To show causation, "but-for (or factual) causation" is the proper standard, which requires the Court to "imagine a counterfactual world" in which the disclosures and representations were not misleading, and then "to consider whether it was more likely than not in this conjured world that [participants and beneficiaries] would not have been harmed." *Amara v. CIGNA Corp.*, 925 F. Supp. 2d 242, 258 (D. Conn. 2012), *aff'd*, 775 F.3d 510 (2d Cir. 2014). In making this assessment, the Second Circuit has long noted that "[c]ourts do not take kindly to arguments by fiduciaries who have breached their obligations that, if they had not done this, everything would have been the same." *In re Beck Indus., Inc.*, 605 F.2d 624, 636–37 (2d Cir. 1979) (citing with approval authority that "as between innocent beneficiaries and a defaulting fiduciary, the latter should bear the risk of uncertainty as to the consequences of its breach of duty").

14

The Acting Secretary has alleged sufficient facts for the Court to find causation in the default judgment context. In the "counterfactual world" compelled by *Amara*, where Frydman had been candid about the Plan's lack of funding, it is more likely than not that participants and beneficiaries would have made alternative arrangement for health coverage or would have deferred elective healthcare. As courts within this circuit have held, causation may be found "even in the absence of direct reliance" by a particular participant. *Osberg v. Foot Locker, Inc.*, No. 07-CV-1358 KBF, 2014 WL 5796686, at *5 (S.D.N.Y. Sept. 24, 2014), *adhered to*, No. 07-CV-1358 (KBF), 2014 WL 5800501 (S.D.N.Y. Nov. 7, 2014). This is an application of the U.S. Supreme Court's reminder of the challenges of such counter-factual proof:

> The failure to provide proper . . . information, in violation of the statute, injured employees even if they did not themselves act in reliance on summary documents—which they might not themselves have seen—for they may have thought fellow employees, or informal workplace discussion, would have let them know if, say, plan changes would likely prove harmful.

*Amara*, 563 U.S. at 444. And, in the context of actions involving multiple participants, such as this one, courts

Under these precedents, causation may be established based on the well-pleaded allegation that the Frydman "failed to warn participants and beneficiaries of the Plan's inability to fund claims and actively deceived them as to its status" (Comp. ¶ 40), and the evidence, in the declaration of senior investigator Pfister, that participants and beneficiaries still sought medical care and submitted claims for coverage through the Plan, resulting in the harm also shown in the Pfister declaration. Drawing "reasonable inferences in [the Acting Secretary']s favor," *Finkel*, 577 F.3d at 84, this is sufficient to show causation. *See DeRogatis v. Bd. of Trustees of Welfare Fund of Int'l Union of Operating Eng'rs Loc. 15, 15A, 15C & 15D, AFL-CIO*, 385 F. Supp. 3d 308, 318 (S.D.N.Y. 2019) (rejecting calls for a heightened standard of causation).

The elements required for surcharge have been established.

2.     Unremitted Contributions

Alternatively, the Court may award damages based on harm to the Plan. Under ERISA section 409(a), fiduciaries are liable to make good all losses sustained by a plan and to disgorge any profits made through their use of plan assets. 29 U.S.C. § 1109(a); *see Diduck v. Kaszycki & Sons Contractors, Inc.*, 974 F.2d 270, 279 (2d Cir. 1992). As discussed in the declaration of Brandon Pfister, defendants' documents show that participants suffered at least $22,359.93 (consisting of $17,891.34 in principal and $4,468.59 in prejudgment interest) in losses resulting from Frydman's misappropriation of Plan assets.

The purpose of awarding pre-judgment interest is not to penalize the fiduciary but to make plan participants whole. *Diduck v. Kaszycki & Sons Contractors, Inc.*, 974 F.2d 270, 286 (2d Cir. 1992); *see Bricklayers & Allied Craftworkers Local 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Const., LLC*, 779 F.3d 182, 190 (2d Cir. 2015) ("Prejudgment interest . . . can constitute appropriate equitable or remedial relief under 29 U.S.C. § 1109(a).") (emphasis omitted).

ERISA section 502(g)(2) provides that upon a successful action to recover unpaid contributions due under a plan, "the court shall award. . . interest on the unpaid contributions," and that "interest on unpaid contributions shall be determined by using the rate provided under the plan, or, if none, the rate prescribed under section 6621 of Title 26." 29 U.S.C. § 1132(g)(2); *see* IRC 6621 Table of Underpayment Rates, *at* https://www.dol.gov/agencies/ebsa/employers-and-advisers/plan-administration-and-compliance/correction-programs/vfcp/table-of-underpayment-rates. This underpayment rate is often used by courts in fiduciary breach cases where the defendants have used plan funds for their own benefit, and where the defendants had a duty to reinvest those funds. *See Russo v. Unger*, 845 F. Supp. 124, 127 (S.D.N.Y. 1994); *United States v. Mason Tenders Dist. Council of Greater New York*, 909 F. Supp. 891, 895 (S.D.N.Y.

1995) ("[C]ourts have often employed the rate used by the Internal Revenue Service ('IRS'), set forth at 26 U.S.C. § 6621."). Here, investigator Pfister followed these procedures to calculate prejudgment interest.

Because of the limited documentation that the Acting Secretary has been able to obtain, an award of unremitted contributions will not fully account for the harm done. Therefore, the Acting Secretary requests that the Court use the surcharge remedy.

### B.    Injunctive Relief

Under ERISA section 409(a), "[a]ny person who is a fiduciary with respect to a plan who breaches any of [his] duties shall be subject to such other equitable relief or remedial relief as the court may deem appropriate, including removal of such fiduciary." 29 U.S.C. § 1109(a).

Courts have agreed that ERISA permits them to appoint independent fiduciaries to properly administer and manage plans. *Marshall v. Snyder*, 572 F.2d 894, 901 (2d Cir.1978) (upholding district court's appointment of an independent fiduciary); *Acosta v. Astro Communications 401(k) Plan*, No. 16-CV-2173 (LAK) (JLC), 2017 WL 2779804 (S.D.N.Y. Jun. 27, 2017) (appointing an independent fiduciary to resolve Secretary's claims).

The Acting Secretary has reviewed several fee proposals from qualified people willing to act as independent fiduciaries for the Plan. (See Hartman Decl. ¶ 7.) While recognizing this Court's discretion in appointing an independent fiduciary, the Acting Secretary respectfully recommends that this Court appoint Metro Benefits, Inc.

## CONCLUSION

The Acting Secretary respectfully requests that the Court grant his motion for default judgment and enter the submitted proposed order and judgment.

DATED:   February 6, 2025
         New York, New York

                                                            EMILY H. SU
Deputy Solicitor of National Operations
Performing the duties of the Solicitor

JEFFREY S. ROGOFF
Regional Solicitor

/s Michael R. Hartman
MICHAEL R. HARTMAN
Counsel for ERISA

U.S. Department of Labor
201 Varick Street, Room 983
New York, NY 10014
(646) 264-3673
(646) 264-3660 (fax)
hartman.michael@dol.gov
NY-SOL-ECF@dol.gov

*Attorneys for the Acting Secretary of Labor*